In the Matter of the Accounting of CENTRAL UNION
TRUST COMPANY OF NEW YORK et al., as Executors
of and Trustees under the Will of AUGUSTUS D.
JUILLIARD, Deceased, Respondents.

JUILLIARD MUSICAL FOUNDATION et al., Appellants;
FREDERIC A. JUILLIARD et al., Respondents and Appel-
lants; LAURA C. DE T. MACHADO, Individually and
as Administratrix of the Estate of AUGUSTUS F.
JUILLIARD, Deceased, et al., Respondents.

Trusts — accumulation of income — when direction for
incorporation of charitable corporation and payment to it
of a trust fund and of all income thereon not actually received
before its incorporation not in conflict with statute forbidding
accumulation of income — sale after incorporation of certain
interests of testator and receipt in payment of notes with
interest antedated to date of death of testator — interest pay-
able to corporation.

1. The statute (Surrogate's Court Act, § 204) changed the common-
law rule which determined how far fixed income made payable on
becoming due after the termination by death of an interest or estate
in the fund from which the income was derived is an incident of that
interest or estate, and in permitting the creator of the successive
interests or estates to stipulate whether such income should be paid
in whole or in part to the holder of the interest or estate at the time the
income becomes due, the Legislature to that extent allows the donor
to fix the incidents of the estates he is creating. He does not in such
case either in form or in fact direct an accumulation of income in favor
of the holder of a future estate; he merely determines to whom such
income belongs at the very moment it becomes available or can be col-
lected. (*Matter of Lamb*, 182 App. Div. 180; affd., 224 N. Y. 577;
*Equitable Trust Co. v. Miller*, 197 App. Div. 391; affd., 233 N. Y. 650,
distinguished.)

2. Where by his will testator gave the residue of his estate to his
executor and trustees with a direction to them to incorporate a chari-
table and educational corporation and transfer to it the entire capital
of said trust fund and to pay to a nephew all income that may be
actually received from the fund until organization of said corporation,
when such payment of income to him should cease without appor-

tionment to him of income partially or wholly earned but not yet due and payable, payment by the trustees to the corporation of the remainder of the income, not specifically directed to be paid to the nephew, is not in conflict with the statute regulating restraints on alienation and accumulation of income. The corporation, therefore, is entitled under the provision of the will to all income derived from the residuary estate of the testator which was partially or wholly earned but not yet due and payable at the time it was incorporated. (*Matter of Potts*, 205 App. Div. 146; affd., 236 N. Y. 658; *Matter of LeFevre*, 233 N. Y. 138; *Maynard* v. *Farmers' Loan & Trust Co.*, 238 N. Y. 592, followed. *St. John* v. *Andrews Institute*, 191 N. Y. 254, distinguished.)

3. The corporation also became entitled to all of the proceeds of a sale of testator's interest in his firm and certain securities which took place after its incorporation, even though the proceeds of such sale were received in notes bearing interest from the date of the testator's death. Even though for some purposes the sale when executed might date back to the time of the testator's death, no agreement and no fiction of law could make interest due and payable at a date when no one was obligated to pay such interest and there was no fund in existence which could earn interest. After the incorporation, any rights of the nephew to income from the residuary estate ceased; and the corporation became entitled to the entire fund with any increments that might be added thereafter.

*Matter of Juilliard*, 207 App. Div. 478, reversed.

(Argued May 22, 1924; decided July 5, 1924.)

CROSS-APPEALS from an order of the Appellate Division of the Supreme Court in the second judicial department, entered December 27, 1923, which affirmed a decree of the Orange County Surrogate's Court settling the accounts of the executors and trustees under the will of Augustus D. Juilliard, deceased.

*Joseph S. Auerbach, Edward Cornell, Charles H. Tuttle* and *Martin A. Schenck* for Juilliard Musical Foundation, appellant. The gift of the residuary estate to charity was immediate and involved neither suspension nor accumulation. The court below erroneously held a part of it to be intestate property. (*Matter of Potts*, 205

App. Div. 147; 236 N. Y. 658; *Maynard* v. *Farmers' L. & T. Co.*, 208 App. Div. 112; *People* v. *Simonson*, 126 N. Y. 299; *Trustees, etc.*, v. *Carmody*, 211 N. Y. 286; *Matter of Graves*, 171 N. Y. 40; *Matter of Le Fevre*, 233 N. Y. 138; *Ingraham* v. *Ingraham*, 169 Ill. 432; *Matter of Morris*, 227 N. Y. 141; *Matter of Allen*, 111 Misc. Rep. 93; 202 App. Div. 810; *Robert* v. *Corning*, 89 N. Y. 225.) No part of the proceeds of sale of November, 1920, with its eighteen months' antedated notes, constituted either accumulations before March, 1920, or income actually received before March, 1920. Neither Frederic A. Juilliard, on the claim of income actually received before incorporation, nor the next of kin, on the claim of intestacy, are entitled to any part thereof. (*Matter of Miller*, 64 Misc. Rep. 232; *Hyatt* v. *Allen*, 56 N. Y. 553; *Matter of Kane*, 64 App. Div. 566; *Worth* v. *Marshall, Field & Co.*, 240 Fed. Rep. 395; *Rodman* v. *Munson*, 13 Barb. 63; Perry on Trusts [6th ed.] 556 [N.]; *McKeen's Appeals*, 42 Penn. St. 479, 485; *Jones* v. *Ogle*, L. R. Ch. App. [1872] 192; *Brown* v. *Collins*, L. R. 12 Eq. Cas. 586; *Clapp* v. *Astor*, 2 Edw. Ch. 379, 383; *Matter of Kernochan*, 104 N. Y. 618; *Matter of Laurence*, 26 N. Y. S. R. 238.)

*Richmond Weed* for St. John's Guild, appellant. There was no intestacy with respect to any part of the income earned prior to the organization of the Juilliard Musical Foundation, but all such income awarded by the decree below to the next of kin should have been awarded to the American Museum of Natural History and St. John's Guild, in equal amounts. (*Meeks* v. *Meeks*, 161 N. Y. 66; *Matter of Ossman* v. *Von Roemer*, 221 N. Y. 381; *Waterman* v. *N. Y. L. I. & T. Co.*, 237 N. Y. 293; *Nourse* v. *Yarworth*, Finch, 155; *Warner* v. *Durant*, 76 N. Y. 134; *Williams* v. *Jones*, 166 N. Y. 522; *Matter of Miller*, 161 N. Y. 71.)

*E. J. Dimock, Lewis L. Delafield* and *Alfred Gregory* for American Museum of Natural History, appellant and

respondent. The direction to pay to the Foundation the income earned prior to its organization but not due until thereafter was invalid. (*Waterman* v. *N. Y. L. Ins. & Trust Co.*, 237 N. Y. 293; *St. John* v. *Andrews Inst.*, 191 N. Y. 254; *Manice* v. *Manice*, 43 N. Y. 303; *Brown* v. *Jarvis*, 2 De G., F. & J. 168.) The insertion in the partners' notes of a provision for the payment of interest on October 25, 1919, was unauthorized by the will and, therefore, such installment of interest must be distributed as though payable on the date authorized by the will. (*Murphy* v. *San Luis Obispo*, 48 Pac. Rep. 974; *Hollywood U. H. S. Dist.* v. *Keyes*, 12 Cal. App. 172.) There was no immediate gift of the fund to the musical charity. (*Matter of Potts*, 205 App. Div. 147; 230 N. Y. 658; *Maynard* v. *Farmers' Loan & Trust Co.*, 208 App. Div. 112; *People* v. *Simonson*, 126 N. Y. 299; *Trustees of Sailors' Snug Harbor* v. *Carmody*, 211 N. Y. 286; *Matter of Graves*, 171 N. Y. 40; *Matter of LeFevre*, 233 N. Y. 138; *Ely* v. *Ely*, 163 App. Div. 320; *Ely* v. *Megie*, 219 N. Y. 112.) The illegality which invalidates the gift of the earned but unpaid income to the non-existent Juilliard Musical Foundation does not invalidate the gift-over to the existing American Museum of Natural History and St. John's Guild. (*St. John* v. *Andrews Inst.*, 191 N. Y. 254.)

*Charles E. Rushmore* for Frederic A. Juilliard, respondent and appellant. The testator did not intend the words " actually received " to be equivalent to actual possession, but contemplated that the interest upon his share of the business of A. D. Juilliard & Co. that would be earned prior to the organization of the Musical Foundation should go to Frederic A. Juilliard. (*Matter of Lamb*, 162 App. Div. 180; 224 N. Y. 577; *Matter of Keogh*, 112 App. Div. 414; 186 N. Y. 544; *St. John* v. *Andrews Institute*, 191 N. Y. 254; *Kelly* v. *Hogan*, 71 App. Div. 343; *Hany* v. *Schumacher*, 50 App. Div. 562; *Matter of*

*Hoyt,* 116 App. Div. 217.) The gift to the Musical Foundation was a gift *in futuro,* with a precedent gift to Frederic A. Juilliard. (*Trustees of Sailors' Snug Harbor* v. *Carmody,* 158 App. Div. 738; 211 N. Y. 286; *Inglis* v. *Trustees of Sailors Snug Harbor,* 3 Pet. 99; *Matter of Potts,* 205 App. Div. 147; *Matter of Graves,* 171 N. Y. 40.) In no event can any part of the income earned prior to April 16, 1920, the date of the organization of the Juilliard Musical Foundation, go either to that Foundation or to the American Museum of Natural History or the St. John's Guild in the city of New York. (*St. John* v. *Andrews Inst.,* 191 N. Y. 254; *Matter of Farmers' Loan & Trust Co.,* 119 App. Div. 104; 189 N. Y. 202; *Matter of Meyer,* 5 App. Div. 443; 181 N. Y. 562; *Matter of McCollum,* 80 App. Div. 362; *Matter of Slocum,* 60 App. Div. 441; 169 N. Y. 153.)

*Isaac N. Mills* and *Joseph M. Fowler* for Catherine J. Walker et al., respondents and appellants. The income prior to the organization of the " Foundation " corporation cannot go to the Foundation; and the decision of the Surrogate's Court to that effect was correct. (*St. John* v. *Andrews Inst.,* 191 N. Y. 254; *Matter of Potts,* 205 App. Div. 147; 236 N. Y. 658; *Maynard* v. *Farmers' L. & T. Co.,* 208 App. Div. 112; *Matter of Wilcox,* 194 N. Y. 288; *Livingston* v. *Livingston,* 74 App. Div. 261; 173 N. Y. 377.) The alternative trust legatees, the American Museum of Natural History and the St. John's Guild, cannot take any part of that income; and the decision of the Surrogate's Court in that respect was correct. (*St. John* v. *Andrews Inst.,* 191 N. Y. 254.) The gift by said subdivision " d " to Frederic did not include the part of said income which had not become due and payable before the organization of the Foundation corporation; and the decision of the Surrogate's Court to that effect was at least to that extent correct. (*Matter of Lamb,* 182 App. Div. 180; 224 N. Y. 577.)

The will, namely said subdivision " d," should be construed as not giving to Frederic any part of that income, because no part of it had been actually received or had even become due and payable before the Foundation corporation was established. (*Ga Nun* v. *Palmer*, 216 N. Y. 603; *Poel* v. *Brunswick-Balke-Collender Co.*, 216 N. Y. 310; *Wood* v. *City of New York*, 200 N. Y. 536; *Smyth* v. *B. U. E. R. R. Co.*, 193 N. Y. 335; *Brown* v. *Quintard*, 177 N. Y. 75; *Allemania Ins. Co.* v. *Firemen' Ins. Co.*, 209 U. S. 326.)

*George Gordon Battle* for Laura C. de T. Machado, individually and as administratrix et al., respondents. The language of the will is plain and unambiguous; there is no room for construction. (*Ritch* v. *Hawxhurst*, 114 N. Y. 512.)

LEHMAN, J. Augustus D. Juilliard died on April 25, 1919. He was a childless widower, possessed of a large estate. By his will he left to his nephew and partner Frederic A. Juilliard the sum of $3,000,000, his house in New York city and his country home at Tuxedo with all their contents, his opera box and all his jewels, furnishings and articles of personal effects of every kind or nature. He made further specific bequests, none of which exceeded the sum of $100,000, to other relatives and to charitable corporations. He appointed Central Union Trust Company of New York, Guaranty Trust Company of New York, his nephew Frederic A. Juilliard and his partner Chester A. Braman and Robert Westaway " to be the executors and trustees under the various Trusts created by this my Will," and to them he left, by the forty-fifth section of his will, the residue of his great estate with a direction " as soon after my death as may be practicable and within the lifetime of my nephew Frederic A. Juilliard and my partner Robert Westaway and the survivor of them, to incorporate or cause to be incorporated

1924.]              Opinion, per LEHMAN, J.       [238 N. Y. 499]

under the general laws of the State of New York or by special act of the Legislature of the State of New York, a corporation to be known as the ' Juilliard Musical Foundation ' which shall have authority, among such other powers as may be conferred upon it, to take and hold property and administer, invest and reinvest the same and to devote the income therefrom to the objects of said organization which shall be in general scope as follows * * *." The objects of the corporation to be formed as set forth in the will were undoubtedly charitable and educational. The will further directed the testator's executors and trustees " upon the organization of said corporation, the Juilliard Musical Foundation and within the lifetime of said Frederic A. Juilliard and Robert Westaway and the survivor of them, to transfer and pay over into the said corporation the entire capital of the said trust fund created by this section of my Will. * * * Until the organization of the corporation Juilliard Musical Foundation as hereinbefore provided (which I trust may be accomplished without any appreciable delay after my death) and within the lifetime of said Frederic A. Juilliard and Robert Westaway and the survivor of them, I direct my said Executors and Trustees under this will to pay over unto said Frederic A. Juilliard all income that may be actually received from the fund provided to be transferred to said corporation upon its organization, but that upon the organization of said corporation all distribution of income from said fund unto said Frederic A. Juilliard shall cease, and there shall be no apportionment to him of income partially or wholly earned, but not yet due and payable at the time above stated."

" If for any reason the said corporation shall not be organized within the time specified, to wit, within the lives of said Frederic A. Juilliard and Robert Westaway, and the survivor of them, or if for any other reason the provisions of this clause shall be ineffectual,

then I give, devise and bequeath the entire fund and estate referred to in this section of my will marked 'Forty-fifth' unto the American Museum of Natural History and St. John's Guild in the City of New York in equal amounts."

The Juilliard Musical Foundation was incorporated by special act of the Legislature on March 30, 1920, more than eleven months after the death of the testator, and the questions which arise upon this appeal relate solely to the disposition of certain items in the executor's accounts which, it is claimed, constitute interest or income earned or accruing before the incorporation of the Musical Foundation. It was the undoubted intent of the testator as expressed in the will that all interest or income which should be earned or should accrue upon the fund prior to the incorporation of the Juilliard Musical Foundation should be paid to the Juilliard Musical Foundation upon its incorporation, except such income as the testator specifically directed should be paid to his nephew Frederic A. Juilliard, but the courts below have held that they cannot give effect to this intention without creating an unlawful accumulation of income, and they have, therefore, ruled that all such income which was intended by the testator to be paid to the Juilliard Musical Foundation passes to his next of kin as if he had died intestate as to it.

We have held that an unconditional gift in trust for, or to be paid over to, a charitable corporation thereafter to be formed, without a precedent gift to private persons, constitutes both as to principal and income an immediate gift to a charitable use, and a direction for the payment to the corporation of income received or earned before the corporation is formed cannot constitute a direction for an unlawful accumulation. (*Matter of Potts*, 205 App. Div. 147; affd., 236 N. Y. 658; *Matter of Le Fevre*, 233 N. Y. 138; *Maynard* v. *Farmers Loan & Trust Co.*, affd., 238 N. Y. 592.) None of these cases had been

decided when this will was drawn, and the draftsman may perhaps have had some doubts whether this court would hold that such a bequest as the testator intended to make constituted an immediate gift or whether the court would refuse to draw any distinction between such a bequest and the bequest which in *St. John* v. *Andrews Institute* (191 N. Y. 254) we held created an expectant estate. In that case this court held that income which accrued upon a trust fund after the termination of the estate of a life tenant could not be held by trustees until the creation thereafter of a charitable corporation which the testator had directed should be formed and to which he had left the trust fund upon the termination of the life estate as soon as the corporation was formed. Such income we held passes to the next of kin under the Statute of Distributions, because a bequest of income in favor of the holder of an expectant estate, even for a charitable purpose, would constitute a direction for an unlawful accumulation, and the income was not otherwise disposed of by will. The rule of that case has no application where the trust for a charitable use is a present and not an expectant estate but, perhaps in order to provide for the contingency that the trust estate in the present case might be held to be a future and not a present estate, the testator has here specifically provided that the trustees shall until the organization of the charitable corporation pay over to Frederic A. Juilliard all income " that may be actually received from the fund provided to be transferred to said corporation upon its organization," thereby precluding the charitable trust from receiving the benefit of any income which might come into the hands of the trustees before the organization of the corporation. Whether in view of this provision, the trust for a charitable use must be regarded as a future or expectant estate rather than a present estate, is of practical consequence only if the payment by the trustees of the remainder of the income to the Foundation when incorporated would

then be in conflict with the statute regulating restraints on alienation and accumulation of income, and the intent of the testator that this remainder of the income should be paid to the Foundation consequently defeated. We find no such conflict even if we assume, without, however, passing upon such. question, that the will creates only a future trust for a charitable use.

The provision for the payment of the income, which may be actually received by the trustees, to Frederic A. Juilliard is coupled with a stipulation against " apportionment to him of income partially or wholly earned but not yet due and payable." The testator evidently had in mind that if there was no apportionment of income which " was partially or wholly earned but not yet due and payable " and all income actually received was paid to his nephew, the entire income of the fund would be disposed of between his nephew and the Musical Foundation. He made no specific disposition of any income which might be due and payable but not actually reduced to possession by the trustees, and the courts below have held that the testator did not intend to use the words " actually received " in any narrow technical sense which would exclude income which was due and payable though for any reason the trustees did not reduce it to possession and that he intended that the Foundation should receive only such income as it would receive under the provisions of section 204 of the Surrogate's Court Act, then section 2674 of the Code of Civil Procedure, " in any case in which it shall be expressly stipulated that no apportionment be made." If the testator had intended any other division he would naturally have made express provision therefor instead of merely providing against apportionment. We agree with the construction of this provision placed upon it by the courts below, but we do not agree that the provision so construed creates a direction for an unlawful accumulation or that any of the disputed payments to Frederic A. Juilliard constitute

income which was earned and due and payable before the Musical Foundation was incorporated.

Prior to the enactment in 1875 of the provisions of the law now embodied in section 204 of the Surrogate's Court Act in regard to apportionment of rents, annuities and dividends, there was at common law no apportionment, between persons having successive estates or interest in property under a will or deed of trust, of any rents payable after the termination of the first estate. Rents were an incident of the estate in existence at the time they were payable. The same rule applied to certain kinds of annuities, interest on public funds and dividends on corporate stock, but did not apply to interest on debts of a private individual or corporation which was subject to apportionment. The statute wiped out these distinctions which rested solely on technical considerations. Thereafter " payments of every description made payable or becoming due at fixed periods " were alike apportionable unless it was expressly stipulated that no apportionment be made. A stipulation that no apportionment be made of income which at common law was payable to the holder of the second estate could obviously not constitute a direction for accumulation of income in favor of that estate, and if such a stipulation cannot be made under the provisions of the statute as to income which was apportioned at common law without creating an unlawful accumulation, the old technical distinctions which the Legislature sought to abolish must still be kept alive at least for this purpose. It was the evident intention of the Legislature that all payments described in the statute should be placed upon the same basis and should be apportioned unless there was a stipulation that there should be no apportionment. When the Legislature expressly permitted such a stipulation, it was not laying a trap for the unwary by giving an apparent option which in fact could be exercised only in a limited class of cases determined by the very technical

distinction which were otherwise abolished by the same statute. The statute changed the common-law rule which determined how far fixed income made payable or becoming due after the termination by death of an interest or estate in the fund, from which the income was derived, is an incident of that interest or estate, and in permitting the creator of the successive interests or estates to stipulate whether such income should be paid in whole or in part to the holder of the interest or estate at the time the income becomes due, the Legislature to that extent allows the donor to fix the incidents of the estates he is creating. He does not in such case either in form or in fact direct an accumulation of income in favor of the holder of a future estate; he merely determines to whom such income belongs at the very moment it becomes available or can be collected.

We recognize that in the cases of *Matter of Lamb* (182 App. Div. 180; affd., without opinion, 224 N. Y. 577) and *Equitable Trust Co. of N. Y.* v. *Miller* (197 App. Div. 391; affd., without opinion, 233 N. Y. 650) the courts below assumed that a stipulation that no apportionment should be made would create an unlawful accumulation. That question was not, however, before the court in either case for decision. In both those cases the question at issue was whether under a fair construction of the provisions of a will the testator intended that the income should be apportioned. Doubtless the courts below reached the conclusion that the testator intended that there should be an apportionment, because they believed that a stipulation against apportionment would be illegal, but the same result would necessarily follow from the rule that a stipulation against the statutory rule of apportionment should not be implied from words of doubtful construction. It follows that the Juilliard Musical Foundation is entitled under the provision of the will to all income derived from the residuary estate of the testator which " was partially or wholly earned but not yet due and payable at the time " it was incorporated.

So far as the record shows, all income that was due and payable at that time had been received by the trustees and was paid to Frederic A. Juilliard under the terms of the will, and no party disputes the propriety of such payment. Thereafter in November, 1920, the trustees sold to the testator's surviving partners his interest in the firm of A. D. Juilliard and Company and in certain securities in mill corporations which were apparently to some extent connected with the business of that firm. The purchase price was over $14,000,000, and the trustees received notes for this sum antedated upon the day of testator's death, with interest at four and one-half per cent payable semi-annually and in addition a check for $965,471.60, being interest at the same rate for the eighteen months from the death of the testator on April 25, 1919, to October 25, 1920. By the thirty-ninth section of his will, the testator provided:

" I authorize and empower my executors and trustees * * * to sell my interest in the firm of A. D. Juilliard and Company to my surviving partners for a sum which shall equal the value of my interest therein at the date of my death, the value of which interest shall be determined upon the inventory value of all the property of said firm * * *, and I authorize my executors to receive in payment for my said interest in said partnership the notes of the surviving members of my said partnership, bearing interest at four and one-half per cent. (4½%) per annum." A similar provision was made for the sale of the testator's interest in the securities of any mills. The courts below have held that under these provisions of the will the trustees were authorized to receive for the property sold, notes bearing four and one-half per cent interest from the date of testator's death; that they could in their discretion make such interest payable semi-annually and that even though the notes were received more than eighteen months after the death of the testator, interest thereon became due and payable under their

terms and in contemplation of law six months after the death of the testator. The interest on this large sum for six months has been ordered paid to Frederic A. Juilliard and only that portion of the interest earned after the date of the incorporation of the Musical Foundation has been paid to it. We pass without considering it the question of whether the sale was made in accordance with the power given by the will; for even though we assume that under that power the trustees could make such sale as of the date of the testator's death, yet such a sale could be made only after agreement with the surviving partners, and when the Musical Foundation was incorporated, no such agreement was in existence. The surviving partners had not at that time obligated themselves to purchase the property; no price was fixed and no interest was earned, due or payable upon such purchase price. Even though for some purposes the sale when executed might date back to the time of the testator's death, no agreement and no fiction of law could make interest due and payable at a date when no one was obligated to pay such interest and there was no fund in existence which could earn interest. After the Juilliard Musical Foundation was incorporated, any rights of Frederic A. Juilliard to income from the residuary estate ceased; and the Juilliard Musical Foundation became entitled to the entire fund with any increments that might be added thereafter. The interest of the testator in the copartnership of A. D. Juilliard and Company and in the mill securities was part of this residuary estate, and when sold thereafter the Juilliard Musical Foundation became entitled to all the proceeds of the sale, including that portion thereof which constitutes so-called interest on a fund which had no existence until the sale was made, and which in fact represents part of the purchase price which the buyers agreed to pay.

The order of the Appellate Division and decree of the surrogate should be reversed and proceedings remitted to

the surrogate to restate the account in accordance with this opinion, with costs to the Juilliard Musicial Foundation payable out of the estate.

HISCOCK, Ch. J., CARDOZO, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Order reversed, etc.