In the Matter of the Estate of Josie M. Rosenstein, Deceased.

Surrogate's Court, New York County, September 4, 1934.

*Strauss, Reich & Boyer,* for the executor of Wilford L. Rosenstein Estate, and for the contestant Alfred Ralston.

*Leo Lilienfeld,* for the executors.

*Weil, Gotshal & Manges,* for the contestant Florence Kahn.

*Mortimer Sperling,* for Rose Berman.

*John G. Dyer,* special guardian for Robert Wilford Mannon, infant.

DELEHANTY, S. The residuary clause in deceased's will purports to put in trust her real property. The validity of the trust provisions is in issue. Deceased left surviving her as heirs and distributees a husband (who survived her about a year), two brothers and four sisters. If the real estate of deceased has not been disposed of validly, the share descending to the husband in intestacy has passed (subject to the qualified ownership thereof by his executors if they need it to pay his debts) to a specific devisee named in his will.

Deceased's will directs that during her husband's life and thereafter during the life or until earlier attainment of age thirty by a niece her real estate shall be held by trustees and that while her husband lived the income be paid three-quarters to him and one-quarter to a brother; and that after the husband's death the share of the income payable to the brother be increased to one-third and the remaining two-thirds be divided between a sister and a niece. The direction follows that when the trust falls in the trustees shall sell the real estate. From the proceeds the trustees are directed to pay certain cash legacies and then to distribute one-third of the balance to named beneficiaries. The remaining two-thirds is then to be divided in two equal shares and each share held in trust during the lives of two named individuals with remainder ultimately payable to beneficiaries not definitely ascertainable until the termination of the measuring lives.

The scheme of the will discloses that the primary intent of deceased was to care for her husband and, in lesser degree, for one of her brothers. Next, but only after her husband died, she provided for a sister by giving to her an income share equal to that of

the brother previously named whose share she increased from one-quarter to a one-third. The remaining third of the income was given to two nieces who were named for the first time. This plan is deceased's primary plan. It contemplates the keeping of the real estate and its management by trustees until the end of the trust and it then directs the sale of the trust corpus.

Deceased's secondary purpose is designed to function only when the trust corpus in the primary trust has been sold. She provides for payment thereout of cash legacies to half-sisters and to nieces and nephews. Finally (but only after the earlier programs had been satisfied) deceased attempted to provide through a secondary trust an income for a sister not theretofore mentioned at all as well as to continue provision for the brother already cared for. The remainders over after this secondary trust were eventually to go in chief part to the nephews and nieces who already had obtained part of the corpus of the primary trust if they survived to take such remainders.

The representatives of deceased assert that the whole testamentary scheme is valid and enforcible. Contra, the representatives of the husband's estate assert complete invalidity in the entire testamentary scheme with consequent complete intestacy as to deceased's real property. The court is under obligation to search the will to determine whether the testamentary scheme may be salvaged in part even if part must be rejected. (*Oliver* v. *Wells,* 254 N. Y. 451; *Matter of Trevor,* 239 id. 6; *Carrier* v. *Carrier,* 226 id. 114.)

Deceased's executors argue that the direction to sell the realty at the end of two lives meets the policy of the statute and that the direction to hold the cash proceeds in trust for a further life is not invalid. The argument is unsound. As was said in *Savage* v. *Burnham* (17 N. Y. 561, 572): " But estates cannot be tied up during one life by a trust in lands, and then for two lives more as personal property, by means of a direction to convert them into money or personalty, and then impressing on them new limitations in that form." Any different ruling would substantially emasculate the statute. The provisions for supplementary trusts in part of the cash proceeds of the original trust corpus must be held to be invalid. (*Savage* v. *Burnham, supra; Matter of Wilcox,* 194 N. Y. 288; *Whitefield* v. *Crissman,* 123 App. Div. 233.) Because the remainders limited on the invalid trusts are themselves contingent, since they are gifts to a class determinable only at a future time, they may not be accelerated and intestacy necessarily results as to this invalidly disposed of two-thirds of the balance. (*Matter of Silsby,* 229 N. Y. 396; *Matter of Durand,* 250 id. 45.)

The husband's executors argue as do the devisees under his will that the necessary consequence of this invalidity in the secondary trust is a failure of the entire trust scheme. The court is of a contrary view. The invalidity here found does not destroy the entire scheme of the will. As stated, the major purpose of deceased can be secured by cutting off the invalid portions and holding effective those which conform to the statute. Accordingly it is held that the trust limited on the life of the husband and on the life or part thereof of the niece is valid. The legacies in fixed amounts and the legacies equal to the value of one-third of the remaining balance of the original trust corpus are likewise valid. Such legacies are charged upon the real property constituting the corpus of the trust. There is intestacy as to the remainder interest (after the primary trust ends) in any realty not needed for the payment of these legacies and, since the husband of deceased survived her, his vested interest in this undisposed of remainder of her real property passed by the devise in his will.

The will of deceased contains a so-called " *in terrorem* " clause. Her representatives urge that all provisions in behalf of her deceased husband are voided thereby because his executors on this accounting have raised questions respecting the validity of her will. In doing so they incurred no penalty. The clause does not by its terms apply to proceedings such as these which search the will to ascertain only its true meaning and effect. A testator may not by such a threat violate the public policy of the State declared in Personal Property Law, section 11, and Real Property Law, section 42.

The executors of the deceased husband assert a right to be paid from the estate of deceased a sum slightly less than $1,500 which is stipulated to be the amount actually incurred and expended for medical, hospital and nursing expenses during the last illness of deceased's husband. By paragraph tenth of her will she provides: " If during the lifetime of my beloved husband Wilford Lincoln Rosenstein, my beloved husband shall become ill and require medical attention and care, then my trustees, if the income given to my husband under the trust estate is not sufficient to take care of the medical expenses incurred as well as to maintain and support him, that the trustees shall obtain a mortgage in an amount not to exceed Fifteen thousand ($15,000) Dollars upon either and/or both premises 130 and 138 West 74th Street, in the Borough of Manhattan, City of New York, and the amount received from such mortgage shall be part of the corpus of the trust estate created in this Will for the benefit of my beloved husband, Wilford Lincoln Rosenstein, and the income thereof shall be used and applied in

payment of any medical expenses incurred for him, and if the income derived from said mortgage money does not amount to twenty-five hundred ($2500) Dollars during any one year, then the trustees shall apply the difference to make up Twenty-five hundred ($2500) Dollars from the principal of the corpus of the trust fund."

The phrasing of this provision leaves in doubt whether deceased understood the weird financing which it outlines. At most the paragraph provides a source out of which the husband could, if he chose, seek funds to pay the expenses in question. The plan was designed to operate in his lifetime. Nothing in its text indicates that deceased intended it as a means of reimbursement to her husband's estate of any amount which he voluntarily expended out of his own resources. He made no attempt to use the power to encroach upon the trust principal or to experiment with the possibility (which seems to have been in the mind of the draftsman) that in some extraordinary way trust funds procured by mortgage would involve no payment of mortgage interest but would produce a net income of nearly seventeen per cent per annum. The husband may well have considered the utter futility of this scheme. He was himself the beneficiary of three-quarters of the income of the trust principal. His interests in that aspect may have seemed to him far more important than the possible results achieved by attempting to carry out the provisions of the quoted paragraph. He may have preferred not to jeopardize the trust as a whole by borrowing on the corpus. He did nothing in fact. His executors have no standing to reverse his decision in the matter. Their claim for reimbursement is in all respects denied.

The real property left by deceased was burdened by a mortgage on which interest was due and payable on the July thirty-first following her death on June sixth. As of the date of her death a substantial fraction of the interest installment due in July had accrued. The installment was paid by the executors who have charged it wholly to income. This is erroneous. The accrued interest was part of the mortgage debt. The devisees took the real property subject to the mortgage debt. (Real Prop. Law, § 250.) The interest accrued as of date of death was a charge against the principal of the trust. The balance only which accrued between the date of death and the due date of the installment should be charged to income. The account will be corrected accordingly.

On June 1, 1932, the rents for June, 1932, accrued and became payable by the tenants of the real property devised in trust. Deceased died on June 6, 1932. The husband's executors claim that there should be credited to the income of the trust at least

that fraction of the June rent which represented the period from the date of death to the end of the month, or four-fifths thereof. The executors have given no credit to income for such rent installment. They are correct in this. The obligation of the tenants having accrued prior to death, the chose in action thus arising constituted part of the principal of the estate. The objection of the husband's executors to the account in this aspect is overruled.

The July rents in the following year became due July 1, 1933. The husband died July 3, 1933. The executors have credited to the income in which the husband participated only that proportion of the July rents, to wit, one-tenth, which represented the portion of the month which elapsed while the husband lived. His executors protest and assert that if the June, 1932, rent is to be excluded, the July, 1933, rent must be included. Their argument is fallacious. The rent for July, 1933, was part of the income for the trust set up for the husband and others. By the terms of section 204 of the Surrogate's Court Act, apportionment is directed to be made unless the terms of the will forbid. No such prohibition is here found. The allocation by the executors is correct. The objection of the husband's executors to that allocation is overruled.

Various questions have been raised respecting commissions. None are payable on specific legacies. None are payable on the value of the real property which by the will passed to the trustees. The inclusion in the account of the property specifically bequeathed is proper since thereby there is presented a complete story of the disposal of deceased's property.

The overpayment to the beneficiary William J. Mannon may be set off against the legacy payable to him.

The deceased husband and his estate may be discharged by the decree settling the account. In the exercise of discretion the court will allow to his estate commissions for the period and in respect of the transactions wherein he participated as executor.

The conclusion reached as to the invalidity of the attempted disposal of the real property in the trust after payment of the legacies held to be validly directed at the end of the primary trust establishes the propriety of the presence in this proceeding of the devisee under the will of the deceased husband. Equally her assigns are proper parties. The application to strike their appearance from the record is denied.

Some other miscellaneous questions have been raised by counsel in their briefs and will be disposed of on the settlement of the decree if the determinations here made do not make decision unnecessary.

Submit on notice decree settling the account in conformity with the foregoing decision.