In the Matter of the Accounting of EDITH COHEN, as Sole Surviving Trustee under the Will of ABRAHAM NEVINS, Deceased.

Surrogate's Court, New York County, August 19, 1949.

*Joseph H. Muller* for sole surviving trustee, petitioner.

*Milton Lewine* and *William Peyton Marin* for Rae Perlman, residuary legatee, and another, petitioners.

*Milton Lewine* for Gladys Vogel and others, respondents.

*Benjamin, Galton & Robbins* for Mount Sinai Hospital, respondent.

*Wolf, Haldenstein, Adler & Freeman* for Home for Aged and Infirm Hebrews of New York, respondent.

*Myron Engelman* for Beth David Hospital, respondent.

*Hays, Wolf, Schwabacher, Sklar & Epstein* for Jewish Family Service, Inc., respondent.

*Weisman, Celler, Quinn, Allen & Spett* for Home and Hospital of the Daughters of Jacob, respondent.

*Harry T. Sherman* for Hebrew Day Nursery of New York, respondent.

*Charles H. Levitt* for Home and Hospital of the Daughters of Israel, respondent.

*Irving D. Lipkowitz* for Beth Israel Hospital, respondent.

*A. Henry Brill* for Hebrew Free Loan Society, Inc., respondent.

*Hess, Mela & Popkin* for Hebrew Technical Institute, respondent.

*Korkus & Korkus* for Bronx Hospital, respondent.

*Alfred Englander* for Jewish Child Care Association, respondent.

*Oscar S. Rosner* for Hospital for Joint Diseases, respondent.

*Stroock & Stroock & Lavan* for Montefiore Hospital for Chronic Diseases, respondent.

*Eppstein & Hirshfield* for National Jewish Hospital at Denver, respondent.

*Hartman & Craven* for Israel Orphan Asylum, respondent.

*Arnstein & Levy* for Lebanon Hospital, respondent.

*Engel, Judge & Miller* for Educational Foundation for Jewish Girls, respondent.

*Spalletta & Bernstein* for Ida R. Bernstein, as executrix of J. Sidney Bernstein, deceased trustee under the will of Abraham Nevins, respondent.

FRANKENTHALER, S. This proceeding is brought by a residuary legatee and the executor of a deceased life beneficiary to construe the testator's will and the trusts created thereunder. Settlement of trustee's account and a construction are also sought by the surviving trustee, and the two proceedings have been consolidated.

In paragraph tenth of his will testator set up a trust for his son David in the sum of $10,000, income to be paid to him quarterly for life. At his death, the principal and all accumulated interest are directed to be paid over equally to " the charitable organizations mentioned in paragraph ' Fifth.' "

Paragraph eleventh directs the creation of a trust of like amount for the care, maintenance and support of testator's son Jerome, with similar remainder to those charities. In paragraph ninth, a secondary life estate in $7,500 of another trust was also

set up for the son David, with remainder of said $7,500 and accumulations to " the charitable organizations mentioned in paragraph ' Fifth.' ' '

Paragraph fifth listed twenty named charitable organizations and gave legacies of $500 to each. In the codicil to the will testator stated that he did thereby " revoke, cancel and annul " paragraph fifth of the will, and he directed gifts to the same charities of $250 each, resulting in a $5,000 diminution of those charitable bequests. He also stated that he did thereby " revoke, cancel and annul " paragraph tenth of the will and he directed the creation of a new trust on the same uses, increasing the corpus from $10,000 to $15,000, the amount of the prior reduction of the charitable gifts.

The necessity for a construction is due to petitioner's assertion that in " revoking " the paragraph listing the charities, the testator impliedly revoked the trust remainders limited to those charities in other parts of the will. That claim is without merit. Even a cursory reading of the will and codicil demonstrates that the latter instrument is an amendment of paragraphs of the will, rather than a revocation in any real sense. The two important clauses in that paper are complementary and indicate a single purpose. The testator took from the immediate bequests to charity the aggregate amount of $5,000, and with that sum augmented the corpus of the trust for the benefit of his son. In effect, the testator simply postponed the enjoyment by the charities of the additional $5,000 so as to allow the benefit thereof to accrue to the son while he lived.

Paragraph fifth provided a chart to guide the executors and trustees in the administration of the estate. The actual bequests therein made were immediate gifts of $500 each; the actual charitable benefits contemplated by the will are those limited after the deaths of the members of testator's family. Those gifts in remainder, amounting in aggregate to $42,500, were made to a group of charities; only for economy of language did testator set out their names in one place for identification (*Wetmore* v. *Parker,* 52 N. Y. 450).

Those remainder gifts were separate and distinct from the immediate legacies. Any act by which the testator may have revoked or reduced the immediate legacies can have no possible effect on the others. By revoking the gifts in paragraph fifth there was no obliteration of the list itself (see *Wetmore* v. *Parker, supra,* p. 464; see, also, *Matter of Halsted,* 174 Misc. 292, and *Van Kleeck* v. *Minister of Ref. Prot. Dutch Church,* 20 Wend. 457).

The second branch of this case involves a construction of the clauses regarding accumulated income. The will provides that upon the death of the life beneficiary David, the trustees shall distribute the principal " with all accumulations of interest thereon then undistributed " to the remaindermen. In the gift after the death of the son Jerome, a similar provision is made, although the word " all " does not appear before the word " accumulation."

Petitioners contend that any income on hand must be apportioned in accordance with section 204 of the Surrogate's Court Act; the charities urge that the testator stipulated against apportionment and claim all the income still available, whether earned before or after the death of the life tenant.

Section 204 provides the method of apportioning income resulting from investments and other sources of steady benefit (*Matter of Palmer,* 133 Misc. 159; *Matter of Taft,* 143 Misc. 387; *Matter of Rosenstein,* 152 Misc. 777). The section by its terms does not apply " to any case in which it shall be expressly stipulated that no apportionment be made ". (*Matter of Juilliard,* 238 N. Y. 499.)

As to any income *actually received* by the trustees during the period of the life tenancy, the court holds that such income must be paid to the beneficiary's executors (*Matter of Watson,* 262 N. Y. 284, modfg. 237 App. Div. 625, modfg. 144 Misc. 213; *Matter of Arnould,* 176 Misc. 793; *Matter of Sulima,* 193 Misc. 159; cf. *Equitable Trust Co.* v. *Miller,* 223 N. Y. 650); a different construction would result in an unlawful accumulation of income.

With respect to funds which accrued during the life tenancy but were not payable until after death, the question of apportionment under section 204 is controlled by *Matter of Watson* (*supra*). The distinction drawn in that case by the Surrogate between a direction to pay " accumulated income," which was there held to be only those sums earned after death, and a direction to pay " accrued income," which was defined as moneys earned before death but only payable thereafter, has been recognized by the earlier and followed by the later decisions. (Cf. *Matter of de Constantinovitch,* 179 Misc. 818; *Matter of Bond,* 72 N. Y. S. 2d 506; *Matter of Bingham,* 73 N. Y. S. 2d 701, and *Matter of Sulima, supra* [directions to pay " accumulations " held not to be stipulations against apportionment], with *Matter of McManus,* 282 N. Y. 420; *Matter of Krauthoff,* 265 N. Y. 477; *Matter of Lamb,* 182 App. Div. 180, affd. 224 N. Y. 577; *Matter of Christensen,* 140 Misc. 291; *Matter of Dexter,*

134 Misc. 195; *Matter of Dreicer,* 155 Misc. 817, and *Matter of Merriam,* 168 Misc. 932 [directions to pay " accrued income " held a stipulation against apportionment]). It may be that in other contexts the word " accumulations " would acquire a meaning equivalent to moneys earned but not paid prior to death, so that its use would constitute a stipulation against apportionment. Here there is completely lacking the certainty necessary to constitute such express stipulation. It has been held that " a stipulation against the statutory rule of apportionment should not be implied from words of doubtful construction." (*Matter of Juilliard,* 238 N. Y. 499, 510, *supra; Kieran* v. *Hunter College Retirement Board,* 255 App. Div. 378, 379.)

In this case, any income which accrued during the life tenancy but which was received by the trustee thereafter will be apportioned between the executors of the life beneficiary and the remaindermen, as there is no stipulation to the contrary.

The final question in the case is whether the funeral expenses of Jerome Nevins, deceased life beneficiary, are to be paid out of the principal or the income of his trust. As to this son, the will makes two alternate provisions, set forth respectively in paragraph eleven, subdivisions (a) and (b). The trustees chose to pursue the first of the two, and hence under the terms of subdivision (a) of the will are to use only the " net income * * * for his burial upon his death."

Submit, on notice, decree construing the will and settling the account accordingly.