In the Matter of the Accounting of PHILIP M. BRETT et al., as Trustees under the Will of MARGARET D. BISHOP, Deceased.

Surrogate's Court, New York County, March 18, 1954.

*Emil V. Pilz* for trustees, petitioners.

*Charles G. Rodman* for West Fife Hospitals Board of Management and another, respondents.

*Cadwalader, Wickersham & Taft* for St. Mary's Hospital for Children, Inc., respondent.

*Root, Ballantine, Harlan, Bushby & Palmer* for Memorial Center for Cancer and Allied Diseases, respondent.

*De Forest, Elder & Mulreany* for Presbyterian Hospital of the City of New York, respondent.

*Robert B. Jarvis* for Philip M. Brett and another, as executors of Anna E. Donald, deceased, respondents.

*Turnbull & Bergh* for Elizabeth T. Gardner and another, respondents.

*Nathaniel L. Goldstein, Attorney-General (Flavius N. Costerella* of counsel), in his statutory capacity under section 12 of Personal Property Law and section 113 of Real Property Law, respondent.

COLLINS, S.   In this proceeding for the settlement of the account of the trustees the validity of a gift to a Scottish hospital is challenged on the one hand by the Attorney-General of the State of New York who argues for the application of the doctrine of cy pres and, on the other, by the residuary legatees of the deceased's sister who maintain that the asserted failure of the bequest results in its intestate passage to them through their testatrix, who was Margaret Bishop's sole distributee.   Vigorously attacked, the gift is as stoutly defended by the West Fife (Scotland) Hospitals Board of Management claiming, under the National Health Service (Scotland) Act 1947 (10 & 11 Geo. VI ch. 27, pt. II, § 6), a status as successor of the trustees of the named legatee.

The testatrix died a resident of the County of New York on August 24, 1938, leaving a will executed in 1935, which was admitted to probate in this court on September 23, 1938.   She directed the division of her residuary estate into three parts leaving one of them outright and the other two in trust for her sister for life with the remainder, subject to the exercise of a power of testamentary appointment given the income beneficiary, passing in accordance with the instructions contained in the text below:   " (c) Upon the death of my said sister, Anna Edgar Donald, without exercising said power of appointment, I give, devise and bequeath said two-thirds of my residuary estate constituting the principal of said trust fund, or if my said sister shall predecease me, then and in that event, I give, devise and bequeath my entire residuary estate as follows: One-half thereof I give, devise and bequeath to the Dunfermline & West Fife Hospital situate in Dunfermline, Fife, Scotland, to have and to hold the same forever.   The remaining one-half of my said residuary estate I give, devise and bequeath to the Ossining Hospital Association of Ossining, Westchester County, State of New York, to have and to hold the same forever.''

Mrs. Donald, the life beneficiary, in an instrument executed on September 16, 1942, unreservedly released the power and died on April 15, 1950, leaving a will later admitted to probate in the Surrogate's Court, Westchester County, in which she announced her specific intention of making no disposition of the property left in trust by her sister. Accordingly, the gift of that part of the residue passing to the Ossining Hospital Association is acknowledged by all parties to this proceeding as having been perfected but dispute, as described, has arisen in connection with the bequest to the Scottish legatee.

The facts upon which the decision will rest have been set forth in a stipulation filed with the pleadings. It is agreed that prior to July 5, 1948, the Dunfermline and West Fife Hospital was an unincorporated entity under the management of a board of trustees in whose individual members title to its properties resided "for behoof of the Hospital and their successors in office as such trustees." It was maintained, in accordance with the provisions of its constitution "for the medical and surgical treatment of persons who are suffering from accidents or non-infectious forms of disease, preferentially for those residing in the town and district of Dunfermline."

On July 5, 1948, the National Health Service Act of 1947 came into operation effecting a transfer of ownership of the hospital from the trustees to the Secretary of State for Scotland and its administration and management together with those of four others, were placed under the control of a body corporate, the West Fife Hospitals Board of Management, which was organized for that purpose in accordance with the terms of the statute. The hospital has since continued to serve the needs of the community and occupies the same buildings and grounds in which its services had formerly been performed.

It should be observed that the Attorney-General declined to become a party to the stipulation but in his answer he concedes the facts necessary to a decision in this matter and consequently the court has not felt it necessary to cause proof to be taken. There is no dispute as to the existence of the hospital prior to the passage of the National Health Service Act nor as to the continuation of its operations. It is, however, the contention of the Attorney-General that the nationalization of British and Scottish medical services brought about a fundamental change in the character of the hospital with the result that it has lost its identity as the entity for which the testatrix intended the bequest. If this is in fact the case, it is a consequence of the

enactment of the statute but it is no longer necessary to have the statute proven (Civ. Prac. Act, §§ 344-a, 391) in order that decision may be reached and for this reason the court cannot accede to the request that the matter be set for hearing.

It is the contention of those who argue for intestacy in this case that the gift of the remainder was not to vest until the death of the life tenant by which time it is claimed the Dunfermline Hospital had ceased to exist thus causing the legacy to lapse. The court finds itself unable to concur in this conclusion because the argument on which it is based is untenable. It is urged that the element of futurity, said to attach to the gift because of the use of the words "upon the death of my said sister," requires that the remainder be held to be contingent. *Wright* v. *Wright* (225 N. Y. 329) is advanced as authority for the asserted proposition but as Surrogate DELEHANTY pointed out in *Matter of Chaim* (168 Misc. 923, 929), "While the decision in that case refers to the divide and pay over rule its value as a precedent on the question of the time of vesting of a remainder interest is now in serious doubt" (citing *United States Trust Co.* v. *Taylor,* 193 App. Div. 153, 159, affd. 232 N. Y. 609). The divide and pay over rule is seldom held to prevail against the constructional preference for early vesting and is never applied unless a condition of survivorship attaches to the gift itself and the question of who the legatee would in fact prove to be depends upon a future contingency (7 Warren's Heaton on Surrogates' Courts, § 17, subd. 1, par. [d]). The existence of a power of appointment is not such a contingency (*Waterman* v. *New York Life Ins. & Trust Co.,* 237 N. Y. 293). The conclusion is inescapable that the gift in remainder vested on the death of the testatrix.

As already noted, it is conceded that the Dunfermline and West Fife Hospital was in existence at the time of the death of the testatrix but it is argued that its entity was extinguished by the passage of the National Health Service Act of 1947. For resolution of this issue the court must turn to the law of England and of Scotland for the capacity of a legatee to take a bequest is determined by the laws of the jurisdiction in which it has its domicile. "But I have not been able to find any well-considered case, in which the question was directly involved where a gift to a foreign charity in trust, contained in a valid testamentary instrument, has been held void, where there was a trustee competent to take and hold, and the trust was capable of being executed and enforced, according to law of the place

to which the property was to be transmitted under the will of the donor.  \*  \*  \*  It is not a matter of any public concern whatever to this state whether the personal property of a person domiciled here shall pass to his heirs or next of kin in a foreign country, or to trustees in trust for charity residing there, or even to a foreign corporation for the purposes of charity.  \*  \*  \*  When a citizen of this state, or a person domiciled here, makes a gift of personal estate to foreign trustees for the purpose of a foreign charity, our courts will not interpose our local laws with respect to trusts and accumulations to arrest the disposition made by the owner of his property, but will inquire as to two things: First, whether all the forms and requisites necessary to constitute a valid testamentary instrument, under our law, have been complied with; and second, whether the foreign trustees are competent to take the gift, for the purposes expressed, and to administer the trust under the law of the country where the gift was to take effect  \*  \*  \*  there is no reason growing out of the facts surrounding the case, or founded upon public policy, for diverting the property into channels not contemplated by the testator. It is no doubt true that the validity of a disposition of personal property at the domicile of the owner is generally the test of its validity in other jurisdictions. But this rule, I apprehend, only requires compliance with forms and with principles of law generally or universally recognized as essential to the transfer or transmission of property. If personal property is disposed of by will and in trust for charity, to take effect in another country, no good reason is apparent for insisting that a full compliance with the local law of the domicile, with respect to the form or duration of the trust, or the definition of the beneficiaries, is necessary to the validity of the disposition.'' (*Hope* v. *Brewer,* 136 N. Y. 126, 137–139.) See, to like effect, *Chamberlain* v. *Chamberlain* (43 N. Y. 424) and *St. John* v. *Andrews Inst. for Girls* (191 N. Y. 254) ; writ of error dismissed *sub nom. Smithsonian Inst.* v. *St. John* (214 U. S. 19) ; *Matter of Idem* (256 App. Div. 124, affd. 280 N. Y. 756).

In cases involving gifts to nationalized hospitals the English courts have uniformly held that if the institution has continued to carry on the activities and to perform the functions it fulfilled prior to the passage of the act it has not ceased to exist as a charity simply because a new form of governing board has been substituted for the old. (*Matter of Frere* [1951], Ch. 27; *Matter of Hunter* [1951], Ch. 190; *Matter of Ginger* [1951],

Ch. 458; *Matter of Meyers* [1951], Ch. 534; "Bequests to Nationalized Hospitals," 93 Sol. J. 786, 787.) The matter was considered at some length by Evershed, Master of Rolls (*Matter of Kellner's Will Trusts* [1950], Ch. 46 C. A.). He said: "I think it is important at the outset to observe that, in my judgment, the body corporate designated by the testatrix the Royal Cancer Hospital (Free) has not — or at least has not been proved to have — ceased to exist. * * * The exhibits in the case include a copy of the charter which was granted in the year 1910 and incorporated the charity which had existed ever since 1851. It would, I think, be surprising if by some chance phrase in an Act of this kind a corporation incorporated by Royal Charter was wholly dissolved. Such a view is indeed, I think, inconsistent * * * with the terms of s. 77 of the Act itself. * * * I think it may well be that the old Committee of Management (who I am disposed to think are covered by the definition of ' governing body '), since they are functi officio, have been dissolved; but in my judgment there is nothing in s. 78, sub-s. I, coupled with the definition paragraph, which (at any rate on the evidence in this case) has the effect that the old chartered corporation has been dissolved and has disappeared. That has this result, that if property by bequest or otherwise is given to the corporation, however that property should now be administered, it still remains in the corporation unless there is something in the Act which takes it away from the corporation and transfers it to somebody else." (Pp. 52, 57.)

Adoption of the reasoning of the cited case brings us to the next question for determination which concerns the authority of the board of management of the hospital to administer the fund in accordance with the directions of the testatrix. Had the trust vested in possession of the hospital or, to be more precise, in the possession of its former trustees prior to the effective date of the statute, serious doubt would arise as to the possibility of its lawful continuation thereafter. The act provides (§ 59, subd. [1]): (1) "Where property, other than property transferred to the Secretary of State or to a Board of Management under section six or section seven of this Act, is held on trust immediately before the appointed day, and the terms of the trust instrument authorize or require the trustees, whether immediately or in the future, to apply any part of the capital or income of the trust property for the purposes of any hospital to which section six of this Act applies, the trust instru-

ment shall be construed as authorising or, as the case may be, requiring the trustees to pay that part of the capital or income of the trust property to the Regional Hospital Board for the area in which the hospital is situated or to the Board of Management of the hospital or group of hospitals comprising the hospital, as the trustees, having regard to the purposes of the trust, may determine. (2). Any sums paid to a Regional Hospital Board or Board of Management in pursuance of the last foregoing subsection *shall, so far as practicable, be applied by them for the purposes specified in the trust deed.*" (Italics supplied.)

The condition underlined in the quoted text was held by the Supreme Court of Rhode Island to have " brought about a condition which makes it impossible for us to be reasonably certain that the funds will be applied by the hospital boards for the purposes of these particular gifts  *  *  *  and therefore  *  *  *  a failure of such gifts has been caused." (*Pennsylvania Co. for Banking & Trusts* v. *Board of Governors of London Hosp.*, 79 R. I. 74, 84–85.) Here, however, the right to possession of the fund did not ripen until the death of the income beneficiary which occurred more than two years after the effective date of the statute. Because of this circumstance this court is of the view that the administration of the fund by the board of management would be governed by the provisions of section 58 of the statute which provides: " A Regional Hospital Board and the Board of Management of any hospital or group of hospitals shall have power to accept, hold and administer any property upon trust for purposes relating to hospital or specialist services or to their functions under Part II of the Act with respect to research."

This section does not provide, as does subdivision (1) of section 59, that the gift will be held free of the trust nor is it qualified by the phrase " so far as practicable ". In all of the decided cases in the English courts involving gifts which took effect after July 5, 1948, the effective date of the statute, the condition was imposed either by the court or upon the suggestion of the Government that the property was to be used for the exclusive use of the designated hospital. (*Matter of Morgan's Will Trusts* [1950], Ch. 637, 209 L. T. 342; *Matter of Glass* [1950], Ch. 643; " Bequests to Nationalized Hospitals," *supra.*) An identical result was reached in *First Nat. Bank of Chicago* v. *King Edward's Hosp. Fund for London,* Superior Court, Cook County, Illinois (EPSTEIN, J.), in

which a bequest markedly similar to that in the present will was upheld on condition that the respondent file an undertaking to secure the performance of its promise to confine the fund to the use of the hospitals specified by the testator.

In the *First Nat. Bank* case (*supra*), the court rested its decision principally upon the application of the doctrine of cy pres but stated: " These hospitals are the identical institutions designated by the testator — rendering the same type of medical service to the same community, in the very same buildings and using the very same facilities. Only management and ownership of these hospitals have been changed by reason of the National Health Service Act. The award of these funds to these hospitals under the present management and ownership is not just an application of these funds to institutions of a similar charitable purpose, but to the identical purpose contemplated by the testator." " * * * There is considerable merit in the contention of counsel for the English Government that this is not a case of failure of the bequest. Where the substance of a charitable gift is the general charitable purpose, and that purpose can be fulfilled, the court will not permit the gift to fail. A court of equity, within its general equitable powers, will provide an effective mode of administering the gift in the event of the incapacity of the named donee to administer it. This power is independent of the *cy pres* doctrine."

The court finds itself in agreement with the reasoning of Judge EPSTEIN but is not disposed to invoke the cy pres doctrine in order to give effect to the gift. In the light of the reasoning of the English cases cited earlier holding that the nationalized hospitals have in no sense lost their former identity, there is no reason for believing that the doctrine should be applied in the circumstances presently obtaining. Were that not the case it is quite possible that a contrary result would be required because of the holding in *Wright* v. *Wright* (225 N. Y. 329, *supra*), upon which those who attack the bequest so heavily rely. In that case it was held that an absolute gift, as distinguished from a gift in trust, will lapse if the corporation named as donee had lost its corporate existence at the time fixed for the bequest to take effect (See discussion of this case in N. Y. Legis. Doc. 1953, No. 65[S]). Here no such situation exists if we are to credit, as we must in accordance with well-settled principles of construction, the decisions of the English courts.

The court finds in the language of the testatrix and the words of gift — " One-half thereof I give, devise and bequeath to the Dunfermline & West Fife Hospital situate in Dunfermline, Fife, Scotland, to have and to hold the same forever " — the expression of a genuinely overriding charitable purpose. It is not easy to believe that she was much concerned with the composition of the governing board of the institution so long as it continued and would continue to provide the service with which she was familiar to the people of the community in which her interest lay so deep. It is perfectly clear from the stipulation of facts that her purpose is being served by the hospital under its present management and the court accordingly holds that the bequest of the remainder may be discharged by its payment to the West Fife (Scotland) Hospitals Board of Management provided that that body file its corporate agreement to confine the use of the fund to the Dunfermline Hospital.

Compensation of counsel for the petitioner has been fixed in the amount requested. Submit decree on notice construing the will in accordance with the foregoing and settling the account as filed.