CITY BANK FARMERS TRUST COMPANY, as Trustee under a Deed of Trust Made by MARY G. ABBEY, Appellant and Respondent, *v.* SUSAN M. ARNOLD et al., Defendants; BESSIE MEAD et al., Appellants; BARBARA E. ARNOLD et al., Respondents and Appellants, and YALE UNIVERSITY et al., Respondents.

Argued April 23, 1940; decided May 28, 1940.

*Grace Humiston* for Bessie Mead, appellant. The additional gifts of £30,000 and £2,000 are now lapsed gifts because title to Chelsea Lodge did not pass to The Royal Academy of Arts. As they are not trust funds and no provision was made for distribution of lapsed gifts in the deed of trust, they should be treated as intestate funds and pass to the next of kin. (*City Bank Farmers Trust Co.* v. *Arnold*, 268 N. Y. 297; *Salsman* v. *Greene*, 130 Misc. Rep. 497; 231 App. Div. 781; 256 N. Y. 636; *Matter of Harrington*, 243 App. Div. 235; *Matter of Rappolt*, 140 Misc. Rep. 239; *Fralick* v. *Lyford*, 107 App. Div. 543; 187 N. Y. 524.)

*Raymond M. Tierney* and *Ambrose J. Delehanty* for Julia B. Holmes et al., appellants. The doctrine of *cy pres* should not be applied to the gift of £30,000 to the Royal Academy of Arts. (*Fralick* v. *Lyford*, 107 App. Div. 543; 187 N. Y. 524; *Matter of Compton*, 72 Misc. Rep. 289; *Matter of Rappolt*, 140 Misc. Rep. 239; *Matter of O'Hanlon*, 147 Misc. Rep. 546; *Camp* v. *Presbyterian Society*, 105 Misc. Rep. 139; *Matter of Wilson*, 1 Ch. Div. 314.) The fund cannot properly be distributed to the beneficiaries to repair the previous abatement caused by insufficiency of funds. (*Lyons* v. *Steinhardt*, 37 Misc. Rep. 628.) The property passes by intestacy. (*Wetmore* v. *N. Y. Institute for the Blind*, 56 Hun, 313.)

*Benjamin Nassau* and *Charles Angulo* for plaintiff, appellant and respondent. If the gifts provided for in the deed of trust were contained in a will it would be quite clear, under well-established rules, that the " bequest " in paragraph (j), if it were held to fail, would form part of the general estate of the decedent and would first be applicable to the payment of other general legacies under the will and thereafter fall into and form part of the residuary. (*Carter* v. *Presbyterian Board of Education*, 144 N. Y. 621; *Albany Hospital* v. *Albany Guardian Society*, 214 N. Y. 435;

*Matter of Title Guarantee & Trust Co.*, 195 N. Y. 339; *Matter of Farmers' Loan & Trust Co.*, 186 App. Div. 722; 226 N. Y. 691; *Wetmore* v. *New York Institute for the Blind*, 56 Hun, 313.) The provisions of paragraph (j) of the deed of trust violate the rule against perpetuities. (*Matter of Potts*, 205 App. Div. 147; 236 N. Y. 658; *Maynard* v. *Farmers' Loan & Trust Co.*, 208 App. Div. 112; 238 N. Y. 592; *Long* v. *Union Trust Co.*, 272 Fed. Rep. 699; 280 Fed. Rep. 686; *Matter of Swain*, L. R. 1 Ch. Div. 669; *Brandenburg* v. *Thorndyke*, 139 Mass. 102; *Matter of Fletcher*, 280 N. Y. 86; *Cruikshank* v. *Home for the Friendless*, 113 N. Y. 337.)

*Cornelius J. Smyth* for Barbara E. Arnold et al., defendants, appellants and respondents. The fact that title to Chelsea Lodge did not vest in the Royal Academy of Arts makes it impossible to carry out the intent of the settlor as to the gifts under paragraph (j) and forbids the application of the *cy pres* doctrine. (*City Bank Farmers Trust Co.* v. *Arnold*, 268 N. Y. 297; *Mount* v. *Tuttle*, 183 N. Y. 358; *Saltsman* v. *Greene*, 136 Misc. Rep. 497; 256 N. Y. 636; *Fralick* v. *Lyford*, 107 App. Div. 543; 187 N. Y. 524; *Ely* v. *Megie*, 219 N. Y. 112; *Matter of Fletcher*, 280 N. Y. 86; *Matter of Merritt*, 222 App. Div. 773; 249 N. Y. 532.)

*Louis Bevier* for National Academy of Design et al., as trustees, defendants, appellants and respondents. The fund may not go to Yale University for the reason that the *cy pres* doctrine may only be invoked in an effort to carry out as nearly as possible the intention of the settlor and may not be invoked to reach a result contrary to that intention as it appears in the trust deed. (*Matter of Rappolt*, 140 Misc. Rep. 239; *Matter of Fletcher*, 280 N. Y. 86; *Bowditch* v. *Attorney-General*, 241 Mass. 168; *Imbrie* v. *Steen*, 96 N. J. Eq. 190; *Larkin* v. *Wykoff*, 75 N. J. Eq. 462.)

*E. Lacy Finnan* and *Patterson Humphrey* for Incorporated Edwin Austin Abbey Memorial Scholarships et al., defendants, appellants and respondents. The validity of the gift of £30,000 under paragraph (j) is to be determined by the

law of England; under English law the vesting of the gift is dependent upon an event which may not happen within the period limited by the rule for the vesting of future estates and is void; and the gift over is also void. (*Shannon* v. *Irving Trust Co.*, 275 N. Y. 95; *Matter of Bewick*, [1911] 1 Ch. 116; *Matter of Wood*, [1894] 3 Ch. 310; *Thomas* v. *Thomas*, 87 L. T. 58; *Attorney-General* v. *Gill*, 2 P. Wms. 369; *Matter of Roberts*, 50 L. J. C. 265; *Matter of Johnson*, [1886] 2 Equity, 716; *Matter of White*, 33 Ch. Div. 449; *Matter of Stratheden*, [1894] 3 Ch. 365; *Matter of Barnett*, 24 T. L. R. 788; *Beard* v. *Westcott*, 5 B. & Ald. 801; *Monypenny* v. *Dering*, 2 DeG., M. & G. 145; *Thatcher's Trust*, 26 Beav. 365.) Since the primary gift to the Royal Academy of Arts and the secondary gift to the National Academy of Design are void, the proceeds become a part of the general trust estate. (*Levy* v. *Levy*, 33 N. Y. 97; *Matter of Crawford*, 113 N. Y. 366; *Carter* v. *Presbyterian Board of Education*, 144 N. Y. 621; *Booth* v. *Baptist Church*, 126 N. Y. 215; *Albany Hospital* v. *Albany Guardian Society*, 214 N. Y. 435; *De Themmines* v. *Bonneval*, 5 Russ. 288; *Powell* v. *Rawle*, 18 Eq. 243; *Chamberlayne* v. *Brockett*, 8 Ch. App. 206; *Matter of Stratheden*, [1894] 3 Ch. 365.)

*Frederic H. Poor, Jr.*, for Royal Academy of Arts, defendant, appellant and respondent. The doctrine of *cy pres* is inapplicable to the gift of £30,000 provided for in paragraph (j) of the deed of trust. (*Matter of Wilson*, [1913] 1 Ch. 314; *Clark* v. *Taylor*, 1 Drewry, 642; *Matter of Packe*, [1918] 1 Ch. 437; *Matter of Rymer*, [1895] 1 Ch. 19; [1895] 1 Ch. 27; *Matter of Emson*, [1905] 74 L. J. Ch. 565; *Matter of Fletcher*, 280 N. Y. 86; *Matter of Merritt*, 222 App. Div. 773; *Saltsman* v. *Greene*, 130 Misc. Rep. 497; 231 App. Div. 781; 256 N. Y. 636; *Matter of Rappolt*, 140 Misc. Rep. 239; *Matter of O'Hanlon*, 147 Misc. Rep. 546.)

*Morgan J. Callahan, Jr.*, and *Thomas Boucher* for Yale University, respondent. The facts and circumstances call for the application of the doctrine of *cy pres* to the fund set up under paragraph (j) of the deed of trust. (*City Bank*

*Farmers Trust Co.* v. *Arnold*, 268 N. Y. 297; *Matter of Gary*, 248 App. Div. 373; 272 N. Y. 635; *Moggridge* v. *Thackwell*, 7 Vesey Jr. 36b; *Matter of Parkes*, 25 T. L. R. 523; *Matter of Peel*, [1921] 2 Ch. Div. 218; *Matter of Robinson*, 203 N. Y. 380; *Matter of Cunningham*, 206 N. Y. 601; *Matter of MacDowell*, 217 N. Y. 454; *Butterworth* v. *Keeler*, 219 N. Y. 446; *Matter of Morris*, 227 N. Y. 141; *Matter of Neher*, 279 N. Y. 370; *Matter of Mills*, 121 Misc. Rep. 147.) It was the clear intent of the settlor to preserve and maintain the works of art with the fund created by paragraph (j) of the deed of trust. (*Hamburger* v. *Cornell University*, 240 N. Y. 328; *Kibbe* v. *City of Rochester*, 57 Fed. Rep. [2d] 542; *Matter of Tiffany*, 157 Misc. Rep. 873; *Green* v. *Britten*, 42 L. J. R. [Ch.] 187; *Camp* v. *Presbyterian Soc. of Sackets Harbor*, 105 Misc. Rep. 139; *Brice* v. *All Saints Memorial Chapel*, 31 R. I. 183; *Ely* v. *Attorney-General*, 202 Mass. 545; *Norris* v. *Loomis*, 215 Mass. 344.) The other charities named in the deed of trust and the next of kin have no valid claims to the fund. (*Attorney-General* v. *Ironmongers' Co.*, 10 Cl. & F. 908; *Matter of MacDowell*, 217 N. Y. 454; *Matter of Davis*, [1902] 1 Ch. Div. 876.) Paragraph (j) of the deed of trust is valid. (*Chamberlayne* v. *Brackett*, 8 Ch. 206; 4 Halsbury's Laws of England, 175; *Matter of Potts*, 205 App. Div. 147; 236 N. Y. 658; *Matter of Juilliard*, 238 N. Y. 499; *Inglis* v. *Trustees of Sailors' Snug Harbor*, 3 Pet. [U. S.] 99; *Odell* v. *Odell*, 10 Allen, 1; *Company of Pewterers* v. *Governor of Christ's Hospital*, 1 Vern. 161; *Matter of LeFevre*, 233 N. Y. 138; *Maynard* v. *Farmers Loan & Trust Co.*, 208 App. Div. 112; 238 N. Y. 592; *Matter of Roe*, 281 N. Y. 541; *Matter of DeBancourt*, 279 Mich. 518; *Chadwick* v. *Chadwick*, 37 N. J. Eq. 71; *Hill* v. *Gianelli*, 221 Ill. 286; *Belfield* v. *Booth*, 63 Conn. 299; *Bird* v. *Merklee*, 144 N. Y. 544; *Russell* v. *Allen*, 107 U. S. 163.)

*John J. Bennett, Jr., Attorney-General* (*Robert P. Beyer* of counsel), respondent. The provisions of the deed of trust, in providing for the public exhibition of the contents of Chelsea Lodge, created a trust for educational purposes.

(*Matter of Gary*, 248 App. Div. 373; 272 N. Y. 635; *Matter of Neher*, 279 N. Y. 370; *Butterworth* v. *Keeler*, 219 N. Y. 446; *Hamburger* v. *Cornell University*, 204 App. Div. 664; 240 N. Y. 328; *Matter of Frasch*, 245 N. Y. 174; *Matter of Judd*, 242 App. Div. 389; 270 N. Y. 516; *Matter of Hall*, 247 App. Div. 719; 272 N. Y. 428; *Matter of Merritt*, 124 Misc. Rep. 709; 249 N. Y. 532; *Matter of Dazian*, 167 Misc. Rep. 151; 255 App. Div. 951; *Matter of Browning*, 165 Misc. Rep. 819; 254 App. Div. 843.) The settlor intended the £30,000 endowment as part of the public trust and same is to be transmitted to the substituted trustee nominated by the court. (*Matter of Neher*, 279 N. Y. 370; *Matter of Mac-Dowell*, 217 N. Y. 454; *Matter of Durbrow*, 245 N. Y. 469.)

LEWIS, J. Mary Gertrude Abbey, the settlor of the trust with which we are concerned upon this appeal, was the widow of Edwin Austin Abbey, an American artist of distinction in the field of mural painting. After the death of her husband in England in 1911, Mrs. Abbey continued to live there until her death on June 20, 1931. She never relinquished her American domicile.

On April 28, 1931, less than two months prior to her death, she executed two instruments by which she provided for the disposition of her entire estate. One instrument was a deed of trust by which she conveyed to the plaintiff, as trustee, the major portion of her property, reserving the income to herself for life and directing that upon her death the principal of the fund be paid to certain charitable institutions and to individuals named as donees, some of which donees were " preferred." The second instrument was her will by which she disposed of the remaining minor portion of her estate, including her residence in England, the devise of which has become an important factor in the present controversy.

Mrs. Abbey was survived by no children or descendants, father or mother, or by any brother or sister. Her nearest surviving kin were first cousins. By her will, which was admitted to probate in Surrogate's Court, New York

county, she devised her English residence, Chelsea Lodge at No. 42 Tite Street, S. W. 3, Chelsea, London, to the Trustees of the Royal Academy of Arts, an English corporation, in trust for the purpose of establishing a museum of art for the benefit of the public. She also bequeathed to the Royal Academy of Arts the contents of Chelsea Lodge, including books and works of art, chief among which were her husband's paintings, drawings, studies and sketch books. In describing the use to which this property was to be put the will provided: " This house is to be used for the purpose of displaying to the best advantage the works of art and other objects of interest therein, my husband's works to take precedence of all others."

In connection with this testamentary disposition of Chelsea Lodge and its contents the testatrix provided by paragraph (j) of the deed of trust, executed simultaneously with her will, that " If upon the death of the Settlor, under the provisions of her * * * will * * * the title to * * * ' Chelsea Lodge ' * * * and the contents [thereof] * * * shall pass to the Trustees of the Royal Academy of Arts in London, England, then to pay over out of the principal of said trust fund to the said Trustees of the Royal Academy of Arts the sum of Thirty thousand Pounds Sterling (£30,000) in trust, * * * and the income shall be used for the safe custody, upkeep, maintenance, payment of rates and taxes, if any, on the said house and land, insurance and repair of said house and its contents, including the provision of such appurtenances as may be deemed necessary by the said Trustees for the proper display of the works of art or other objects therein and for the payment of a Curator and servants for cleaning, for the proper maintenance of the·house as a Museum of Art, and its contents and the making and printing of catalogues and descriptive booklets. * * * In the event that by reason of fire or other accident the continuance of the said house and its contents as a Museum, as aforesaid, shall become impossible, the above mentioned fund of Thirty thousand pounds sterling (£30,000) shall be added

to ' The Edwin Austin Abbey Memorial Trust Fund for Mural Painting in the United States of America ' above mentioned in paragraph (f) of this Agreement and shall be paid over to the National Academy of Design in the City of New York, State of New York, as Trustee of the last mentioned fund."

After the death of Mrs. Abbey circumstances unforeseen occurred to thwart her plans thus laid. In the course of administration proceedings Chelsea Lodge was sold to raise funds sufficient to pay English death taxes. In consequence the title to Chelsea Lodge never passed to the Royal Academy of Arts. Lacking facilities for exhibiting the works of art and other contents of Chelsea Lodge bequeathed to the Royal Academy of Arts, its trustees found it impracticable to take possession of the bequest and accordingly joined with the Attorney-General of England in giving formal consent to the transfer by the English administrator to the plaintiff trust company, as executor of Mrs. Abbey's will, of the paintings, drawings, studies and sketch books of Edwin Austin Abbey and other articles among the contents of Chelsea Lodge. The plaintiff executor thereupon applied to Surrogate's Court, New York county, under section 12 of the Personal Property Law (Cons. Laws, ch. 41) for a decree determining that the works of art and related articles received from the English administrator be administered *cy pres* in a manner which the Surrogate should determine would accomplish the general purpose of the bequest. Then followed, without objection, a Surrogate's decree applying to the bequest the doctrine of *cy pres* and directing the plaintiff executor to transfer the art collection to Yale University, there to be used for exhibitional and educational purposes.

No party to this appeal objects to the decree by which the respondent Yale University was given possession and control of the works of art which had been originally bequeathed to the Royal Academy of Arts. Upon this accounting by the plaintiff trustee the controversy concerns chiefly the distribution to be made of the settlor's gift of thirty thousand

pounds sterling under paragraph (j) of the deed of trust. The challenge by the appellants goes to the propriety of the order by Special Term, affirmed by the Appellate Division, one justice dissenting, which directs the plaintiff trustee to administer that gift *cy pres* by paying it to Yale University.

We agree with the disposition made of the gift in question. On a prior occasion, when the same deed of trust, executed by Mrs. Abbey, was before this court for consideration, it was said in the opinion by Judge CROUCH that " * * * upon her death by far the larger part of the principal was, in a manner intended to perpetuate the name and fame of her husband, *devoted to purposes broadly educational and benevolent.*" (*City Bank Farmers Trust Co.* v. *Arnold*, 268 N. Y. 297, 301.) Our adherence to that view has not been shaken as we have dealt with the problems which the present appeals present. The dominant note in paragraph (j) of the trust indenture and in the " Seventh " paragraph of the settlor's will is her desire to give permanence to her husband's achievements as an artist whose ability found its highest expression in mural painting. But there is clearly manifest an intent by the settlor to promote the style of painting peculiar to her husband's murals which she endeavored to accomplish by making available for study not alone his paintings but his " drawings, studies and sketches, including sketch books." We are told by various appellants before us that there was in her expressed intent, when viewed in a light purely legalistic, a " specific purpose," as distinguished from a general charitable purpose. But again we conclude — in this instance with reference to paragraph (j) — that the gift intended was to be " * * * devoted to purposes broadly educational and benevolent." Thus classified, and to avoid a failure of the settlor's gift because of its relation to that part of the " Seventh " paragraph of her will which has become inoperative, we believe that the doctrine of *cy pres* was properly applied to effectuate her general purpose. (*Matter of Neher*, 279 N. Y. 370, 374; *Matter of*

*MacDowell*, 217 N. Y. 454, 465, 466; *Matter of Gary*, 248 App. Div. 373, 375; affd., 272 N. Y. 635; American Law Institute, Restatement of the Law of Trusts, § 399; *Biscoe v. Jackson*, 35 Ch. Div. 460; *Matter of Wilson*, [1913] 1 Ch. 314, 321.)

We are not unmindful of the rule in *Matter of Fletcher* (280 N. Y. 86). But there, unlike the present case, there was no evidence of a general charitable intent by the donor and the will contained a definite provision for a gift over to a named beneficiary.

It has been suggested that the gift provided by paragraph (j) — the amount of which has been reduced one-third by abatement and by administrative charges — is excessive and that a portion should go to other " preferred " donees to lessen the abatement they have suffered. We cannot say in the circumstances disclosed by the record that the cost of the custody, maintenance and exhibition of three thousand objects of art by any institution which might have been designated by the application of the *cy pres* doctrine, is so at variance with the income available from the gift as to negative an intent by the settlor that the entire gift should be used as the source of income with which to maintain the collection for public benefit.

The recital in the decision at Special Term that the fund created by paragraph (j) is not a trust but an outright gift does not make inapplicable the doctrine of *cy pres*. (Pers. Prop. Law, § 12; *Matter of Neher, supra; Matter of Gary, supra; Sherman* v. *Richmond Hose Co.*, 230 N. Y. 462, 467.)

Nor does the language of paragraph (j), as we read it, violate the rule against perpetuities. The trust indenture expresses the settlor's intent that the gift of thirty thousand pounds sterling should vest in the donee at her death — not at some later date. The language is: " If *upon the death* of the Settlor " the title to Chelsea Lodge and its contents should pass to the Royal Academy of Arts, then the gift of thirty thousand pounds should be paid to that institution. The gift thus intended being, as we believe,

for a general charitable purpose, there was implicit in the settlor's language the legal inference that if for any reason not mentioned in the deed of trust, title to Chelsea Lodge should not pass to the Trustees of the Royal Academy of Arts, then the gift of thirty thousand pounds should be paid over *upon her death* to an institution appropriately designated by a court, upon the application of the *cy pres* doctrine. In either event the gift vests " upon the death of the Settlor." (*Matter of Potts*, 205 App. Div. 147; affd., 236 N. Y. 658. Cf. *Matter of Juilliard*, 238 N. Y. 499, 506.) The settlor's language permits of no inference that a period may elapse between the death of the settlor and the vesting of the gift of thirty thousand pounds.

" The exercise of the *cy pres* doctrine always involves a large measure of discretion." (*Sherman* v. *Richmond Hose Co., supra*, p. 473.) We find in the record nothing to indicate an abuse of that discretion by Special Term. As to any questions of law argued by the appellants severally and not discussed herein, our views accord with the decision at Special Term, affirmed by the Appellate Division.

The judgment should be affirmed, with costs to all parties appearing by separate counsel and filing separate briefs, payable out of the fund.

LEHMAN, Ch. J., LOUGHRAN, FINCH, RIPPEY, SEARS and CONWAY, JJ., concur.

Judgment affirmed, etc.