Ringrose, J.
This is an application by Syracuse University in accordance with the provisions of the agreement hereafter noted, for authority to pay to State University the income from the endowment funds bequeathed to the petitioner in the fifteenth paragraph of the will of Francis Hendricks, deceased.
Upon the motion of the petitioner and the consent of all parties concerned, a proceeding pending in the Surrogate’s Court of Onondaga County, brought by Francis Hendricks, one of the distributees of the testator, for a construction of the residuary clause of the will and an accounting in the trust by the trustees of Syracuse University, was consolidated with this proceeding pursuant to sections 96 and 97 of the Civil Practice Act.
*907 Acquiescence in the relief sought by the petitioner is indicated from the answers interposed by the Attorney-General, State University, and First Trust and Deposit Company, as executor of the testator’s will.
The answer interposed by the distributees seeks an adjudication that the trust has failed and declaring that the corpus of the trust reverts to them.
A brief recital of the factual background will serve to clarify the issues thus raised.
The last will and testament of Francis Hendricks, who died on June 9, 1920, was admitted to probate in the Surrogate’s Court of Onondaga County on August 2,1920. The fifteenth paragraph of the will provides: “ fifteenth: All the rest, residue and remainder of my estate, both real and personal, I give, devise and bequeath to Syracuse University, to have and to hold the same as an endowment for the benefit of the Medical College of such University, the principal to be held intact and the income therefrom used for the expense of such medical and surgical research as the faculty of said Medical College shall consider most likely to result in the promotion of medical and surgical knowledge of practical benefit and the trustees of said University shall approve, the fund hereby created to be known as the Francis Hendricks Endowment for Medical Research.”
Syracuse University duly accepted the bequest and received cash and securities of the value of $359,257.16, pursuant to a decree of the Surrogate’s Court of Onondaga County entered on the 23d day of March, 1930, settling the final account of First Trust and Deposit Company. The corpus of the trust as of June 30, 1954, amounted to the sum of $660,613.39, and the accumulated income to $213,174.90.
The income from the trust was paid by the trustees of Syracuse University to the college of medicine for medical and surgical research according to the terms of the will, until 1949, when it was determined by the trustees that it was no longer feasible or financially possible to continue the college of medicine as a Syracuse University institution due to the mounting annual deficits of the college of medicine as a result of the steadily increasing cost of medical education.
In 1948 the Legislature of the State of New York by chapter 695 of the Laws of 1948 enacted subdivision 2 of section 354 of the Education Law. This statute delegated to the Board of Trustees of the State University, subject to the general supervision and approval of the Board of Regents, the duty to: “ 2. Formulate plans and make recommendations for the establishment of two health and medical centers as part of the state university. *908 Such centers may include facilities for schools of medicine, dentistry, nursing, public health and such other programs or activities as may be necessary. One of such centers shall be located in or as close to the city of New York as may be feasible and the other in some other area of the state at least one hundred miles distant from the city of New York. * * * The establishment of such centers may be accomplished by the acquisition, absorption or expansion of existing medical training facilities or by the establishment of new facilities or by the extension of financial assistance or grants to existing institutions pursuant to agreements for the expansion of facilities in such institutions. ’ ’
Subsequent to the enactment of the above subdivision 2 of section 354 of the Education Law and prior to June 16, 1949, the board of trustees of Syracuse University offered to transfer the college of medicine to State University in connection with the establishment by State University of a medical center at Syracuse, New York.
On June 16, 1949, the board of trustees of State University adopted the following resolution:
“ resolved that it is in the best interest of the people of the State that the Board of Trustees of the State University of New York locate the up-state medical center at Syracuse, and, upon completion of arrangements satisfactory to the Board of Trustees of the State University, the executive officers of the University are authorized to enter into and carry out appropriate agreements for incorporating the medical school at Syracuse University into the State University of New York, subject to the approval of the Board of Regents.”
Thereafter, following negotiations extending throughout the greater portion of the following year, between the trustees of Syracuse University and State University, an agreement was executed on June 1,1950, which provided in substance as follows:
Article 11.1. Syracuse University agreed to transfer to State University by deed and bill of sale, the real property on which Syracuse Medical College is situate, together with the buildings, improvements, furniture, equipment and all personal property inventory for a sum of money computed as provided in the agreement.
Article 11.10. The deed of conveyance was to provide that the premises conveyed should be used only for higher educational purposes and in the event that the State of New York shall cease to use the premises or any portion or portions thereof for purposes of higher education, such premises or the portion or portions thereof no longer used for higher educational purposes shall revert to Syracuse University along with the holdings thereon.
*909 Article 111.2 (b). “ Endowment funds, the income of which Syracuse University agreed to pay to State University for Medical Center purposes, only upon court authorization. It is agreed that these endowment funds generally consist of gifts or bequests to the College of Medicine in name or in purpose, the use of only the income of which is permitted by the instruments creating them.”
Article 111.3. “ With respect to the endowment funds specified in classifications (b) and (c) of ‘ Exhibit B ’, Syracuse University will make application to a court of competent jurisdiction for an order or orders directing that the income of each particular fund, and the principal thereof where the use of principal is directed by the instrument creating the fund, be expended, as long as the Medical Center is located adjacent to the campus of Syracuse University, for a purpose or purposes of the Medical Center which in the judgment of the court will most effectively accomplish the general purpose of the instrument creating each such fund.”
Article 111.4. “ Syracuse University will apply the accumulated income and current income from the endowments specified in ‘ Exhibit B ’, and the principal of the endowments specified in classification (c) of ‘ Exhibit B ’ at such times as requested by State University, but not more often than annually, to such uses and objects of the Medical Center as may be designated by State University, provided such uses and objects are permitted by the terms of the instrument which created the endowment, and provided further that such payment can be made under applicable court orders! Where the terms of a gift are precatory, the uses and objects of the Medical Center to which such income shall be applied shall be those which most nearly conform to the precatory request of the donor of the fund. ’ ’
There has been substantial compliance with the terms of the agreement by both State University and Syracuse University, except for the failure of Syracuse University to institute the appropriate court proceedings authorizing payment of the income from the corpus of the Francis Hendricks endowment to State University. (Article 111.3.)
The present proceeding was commenced pursuant to the above provisions of the agreement and in accordance with the direction of the court in State Univ. of New York v. Syracuse Univ. (285 App. Div. 59).
It is the contention of the petitioner that the language of the fifteenth paragraph of testator’s will manifests a general charitable purpose which warrants the application of the doctrine of cy pres to the disposition of the income from the Hendricks *910 endowment fund. The distributees of the testator maintain that the transfer to State University of the Medical College of Syracuse University terminated its existence and that since the gift contained in the fifteenth paragraph of the will was for a specific charitable purpose, the application of the doctrine of cy pres is precluded and the corpus of the endowment passes as intestate property to these distributees. (Saltsman v. Greene, 136 Misc. 497, affd. 231 App. Div. 781, affd. 256 N. Y. 636; Matter of Koons, 206 Misc. 854; 3 Scott on Trusts, § 393.3; Bogert on Trusts [2d ed., 1942], §§ 53, 86.)
The issues thus raised require a construction of the fifteenth paragraph of the testator’s will.
It is conceded that the will of Francis Hendricks executed on January 19,1920, was drafted by the testator’s close friend and personal attorney, Frank H. Hiscook, who subsequently became Chief Judge for the Court of Appeals. The care and precision which is reflected in the draftsmanship of the will requires that there' be attributed to ordinary words their usual and accepted meaning, and words having a technical or legal significance must receive a particular or technical interpretation. (Adams v. Massey, 184 N. Y. 62, 70; Overheiser v. Lackey, 207 N. Y. 229, 233; Matter of MacDowell, 217 N. Y. 454; Matter of Durbrow, 245 N. Y. 469; Matter of Watson, 262 N. Y. 284; Matter of Catlin, 97 Misc. 223, 227.)
Words may not be capriciously rejected as meaningless but interpreted according to the perspective and context in which they are found (Matter of Pepper, 307 N. Y. 242, 251), and especially cogent on the issue raised is the rule that where a general benevolent purpose is manifested by a testator, the terms of the will shall be liberally construed to the end that his purpose will be upheld and effectuated. (Matter of Neher, 279 N. Y. 370, 373-374; Matter of Potter, 307 N. Y. 504, 517; Matter of Pattberg, 282 App. Div. 770, affd. 306 N. Y. 835; Matter of Robinson, 203 N. Y. 380, 388.)
Although it may approach the realm of speculation to infer that the testator envisioned the possible future separation of the Medical College from Syracuse University, nevertheless, the right to withhold income, indubitably reserved to the trustees of Syracuse University, signifies the delegation of a degree of control by which the testamentary purpose could be effectuated upon the happening of such a contingency, or in the event of failure or refusal of the staff of the medical college to propose a plan of research satisfactory to the trustees of the university. The latter possibility appears more illusory than the severance of the medical college since it is assumed that the trustees of the *911 university could remove the staff of the medical college or those members thereof whose views were opposed to the trustees in respect to research to be financed by the income from the endowment. It is significant in this connection that no provision was made for circumventing the required approval.
It also will be observed that the will does not specifically require that the research approved shall be exclusively limited to that conducted by the medical college although the context might admit of an inference in favor of such an interpretation, were it not for the fact that a disagreement between the medical staff and the trustees of Syracuse University would frustrate the purpose of the bequest.
Mindful of the familiar rule of construction that ‘ ‘ The entire applicable portion of the will must be read and considered, and not merely isolated segments, and the intent is to be gleaned from that complete consideration ” (Matter of Potter, supra, p. 517), and giving to each word and phrase the meaning naturally imputed by reason of context, persuades the conclusion that reference to ‘ ‘ Medical College of such University ’ ’ in the fifteenth paragraph of the testator’s will was indicative of a preference in favor of this institution as the most likely facility or instrumentality for conducting the type of research contemplated, and was secondary to the dominant purpose of the testator that the income from the endowment corpus should be used for the expenses “ of such medical and surgical research * * * most likely to result in the promotion of medical and surgical knowledge of practical benefit ”. “ The promotion of medical and surgical knowledge of practical benefit ” implies such knowledge as will aid in the curing of the ill and the healing of the maimed, and denotes a general charitable purpose.
Further indicia favoring an interpretation consonant with a general educational purpose ■ is found in the nature of the bequest. That it was designed as a permanent memorial is self-evident. It was absolute and in perpetuity to Syracuse University and “ to be known as the Francis Hendricks Endowment for Medical Research.” “ The term endowment ’ has been defined as the bestowment of money as a permanent fund, the income of which is to be used in the administration of a proposed work.” (St. Joseph’s Hosp. v. Bennett, 281 N. Y. 115, 118.) The instant bequest was of the testator’s entire residuary estate with no provision for reverter or gift over or hint of forfeiture if literal compliance with the directed use of the income should become impossible.
The bequest, therefore, vested absolutely in Syracuse University upon the death of the testator. (Matter of Potts, 205 *912 App. Div. 147, affd. 236 N. Y. 658; Matter of Juilliard, 238 N. Y. 499; St. Joseph’s Hosp. v. Bennett, supra; Matter of Harrington, 243 App. Div. 235; Matter of Swan, 237 App. Div. 454.)
Attributing to the testator the intention above indicated invokes the rule uniformly recognized in this jurisdiction, that in the absence of an express provision for a reverter or a gift over, a bequest for charitable or educational purposes will not revert to the heirs of the testator in the event execution in the manner directed by the testator becomes impossible. (Matter of Scott, 1 Misc 2d 206; Matter of Harrington, supra; Matter of Swan, 237 App. Div. 454, 461, 462, supra, affd. sub nom. Matter of St. John’s Church of Mt. Morris, 263 N. Y. 638, citing Associate Alumni v. Theological Seminary, 163 N. Y. 417, 422, and Stewart v. Franchetti, 167 App. Div. 541, 547.) Nor may a condition subsequent, as urged by the distributees, be implied to defeat the gift where none is expressed. This rule was enunciated in Sherman v. Richmond Hose Co. (230 N. Y. 462, 470) as follows: “In construing the will it is to be remembered that such conditions [subsequent] are not favored. The intention to create them must clearly appear.” (citing Rose v. Hawley, 118 N. Y. 502).
The decisions relied upon by the respondent distributees in support of their contention that the bequest was limited to a specific purpose and upon the failure thereof, reverts to the respondents, are based upon factual characteristics peculiar to each controversy.
Saltsman v. Greene (136 Misc. 496, affd. 231 App. Div. 781, affd. 256 N. Y. 636, supra) involved a bequest in trust, the income from which was to be used to repair the building and beautify the grounds of the Baptist Church in the village of Virgil, Cortland County. The church had ceased to exist and its assets had been taken over by the Baptist Missionary Convention of the State. The State Convention and the First Methodist Episcopal Church of Virgil claimed the fund under the doctrine of cy pres. The claims were rejected by the court on the ground that the bequest was limited by the testator to a specific purpose which was impossible of performance. The court held that the doctrine of cy pres could not be applied to save the trust without attributing to the decedent a testamentary intent not warranted by the will and wholly speculative.
In Matter of Merritt (280 N. Y. 391), the testator directed the establishment of a public cemetery on the farm which he occupied for the burial of the people of the community without charge and bequeathed his residuary estate in trust, the income from which-was to be applied to the maintenance of the cemetery. *913 The claims of the creditors presented at his death seriously depleted the estate and required a sale of the farm. The trial court held that the language of the will manifested a charitable intent and applied the doctrine of cy pres by directing the purchase of a suitable plot for a nonsectarian cemetery at a cost not to exceed $11,000, the balance remaining in the estate. The decision of the lower court was reversed on the factual finding that the language of the will manifested a specific charitable purpose which precluded the application of the cy pres rule.
In Matter of Fletcher (280 N. Y. 86) the gift failed for the reason that the legatee was nonexistent at the time of the testator’s death, and the amount of the bequest was inadequate to establish the hospital as directed by the testator. Moreover the will contained a gift over upon failure of the bequest. The decision in Matter of Fletcher was commented upon in City Bank Farmers Trust Co. v. Arnold (283 N. Y. 184, 194), as follows: “ We are not unmindful of the rule in Matter of Fletcher (280 N. Y. 86). But there, unlike the present case, there was no evidence of a general charitable intent by the donor and the will contained a definite provision for a gift over to a named beneficiary.”
The decision in Matter of Koons (206 Misc. 854, supra) was dictated by the factual finding that the bequest was limited to a specific charitable purpose which was incapable of performance and the doctrine of cy pres was therefore inapplicable to save the trust.
One further legal principle requiring consideration is raised in a reply memorandum recently received on behalf of the distributees, and relates to the claim of the Attorney-General that the bequest does not constitute a technical trust. It is their contention that ‘ ‘ If the gift, * * * does not create a technical trust, then the application of the doctrine of Gy Pres is precluded because since September 1, 1953 (Law 1953 — Oh. 715) Personal Property Law No. 12 was amended to the effect that the following words were added to subdivision 2A...... ‘ whether or not the gift, grant or legacy creates an express trust for such purpose.’ ” (citing Matter of Fowler, 268 App. Div. 788, affg. 43 N. Y. S. 2d 94; Matter of Collins, 254 App. Div. 649, and Matter of Rappolt, 140 Misc. 239).
It appears from the decision in Matter of Fowler (supra) that the provision of the will presently under consideration is wholly dissimilar from those of the Fowler will. The gift in the Fowler will was expressly subject to a condition subsequent upon the happening of which it passed to a designated substitutional legatee. The condition was, in the words of the *914 testatrix, “ Any and all provisions in favor of said Association and Hospital contained in this Will are only to be effectual in case said Helping Hand Association or its successors shall have in active operation and actual maintenance a Hospital in the Village of Peekskill, or Town of Cortlandt at the several times it is entitled thereto ”. Upon default thereof the testatrix directed ‘ ‘ that any such legacy to which otherwise it would be entitled at any such time or times, shall lapse and that the amount thereof shall be then paid by my then acting executor to said (First) Presbyterian Church of Peekskill The instant will contains neither an expressed condition of comparable import, nor language from which it may be inferred.
Matter of Collins (supra) appears to have been an affirmance of a decree of the Surrogate’s Court without opinion by either court, or at least diligent research has failed to disclose a reported decision.
Matter of Rappolt (supra) involved a bequest to “ the hospital for lung and heart disease ” of Durrenzimmern, G-ermany. The designated hospital did not exist at the time of the death of the testator and never had existed, nor had there been a hospital of any kind in Durrenzimmern, which was a small community. The rationale of this decision is that the legacy lapsed for the reason that the legatee never existed and the will failed to specify any charitable, educational, or religious purpose which would permit the application of the doctrine of cy pres.
The decisions in the foregoing authorities demonstrate the existence of a factual situation entirely at variance with the facts in the pending proceeding and may not be accepted as authority for the broad general principle advocated by the respondent distributees. The great weight of authority is to the contrary. (City Bank Farmers Trust Co. v. Arnold, 283 N. Y. 184, supra, citing Personal Property Law, § 12; Matter of Neher, 279 N. Y. 370, 374, supra; Matter of Gary, 248 App. Div. 373, affd. 272 N. Y. 635; Sherman v. Richmond Hose Co., 230 N. Y. 462, supra. Also see Matter of Walter, 150 Misc. 512; Matter of Lane, 201 Misc. 1003, and Matter of Scott, supra, p. 209.)
A reasonable correlation of the rule would seem to be that the law impresses upon the legatee or donee those trust duties essential to effectuate the benevolent or educational purposes of the gift. In Matter of Walter (supra, p. 514) Surrogate Foley stated the rule as follows: “If it is reasonably certain that the testator intended that the bequest be devoted to purposes *915 of charity, even where there is no formal trust, a ‘ gift in trust will he implied.’ ” (Citing Matter of Durbrow, 245 N. Y. 469, 477, supra; Sherman v. Richmond Hose Co., supra; Matter of Mills, 121 Misc. 147; Bowman v. Domestic & Foreign Missionary Soc., 182 N. Y. 494; Ely v. Ely, 163 App. Div. 320, and Manley v. Fiske, 139 App. Div. 665, affd. 201 N. Y. 546.)
The context of the other paragraphs of the will containing cogent gifts of a benevolent nature, is corroborative of the construction and interpretation herein.
Although the testator was not a graduate of any college or institution of advanced education, his keen interest in Syracuse University was clearly demonstrated by the bequest of $500,000 contained in the fourteenth paragraph of his will for the erection of a chapel on the campus of the university to be known as the 11 Hendricks Chapel. ’ ’
The will contains other charitable bequests totaling $55,000, all of which were absolute without provision of gift over or reverter in the event of failure, except as the bequest would fall into and pass as a part of the residuary estate.
These bequests reflect a broad benevolent plan for the disposition of a major portion of the testator’s fortune for the benefit of the community in which he had lived, prospered, and been elected to high public office.
At the time of his death he was a widower without children or descendants. His nearest relatives were cousins to whom he bequeathed legacies in varying amounts. He also remembered his employees and certain of his friends.
In view of the determination herein, the motion to dismiss the petition and answer of the distributees made by the Attorney-General at the opening of the trial and renewed at the close of the evidence in which State University, Syracuse University, and the executor joined, is granted.
Since present circumstances render impossible the payment of the income from the Francis Hendricks endowment fund to the Medical College of Syracuse University, there remains for consideration the question whether the payment to State University to be used for medical and surgical research of the nature theretofore conducted by the Medical College of Syracuse University, would fairly effectuate the benevolent purpose contemplated by the testator at the time of the execution of the will.
It appears from the testimony of Dr. Wilfred W. Westerfeld, professor of biochemistry, who was formerly with the College of Medicine of Syracuse University, and is presently on the staff of the State University Medical Center of Syracuse, that the *916 income from the Francis Hendricks endowment fund was used by the Medical College of Syracuse University for research in the field of biochemistry and in general to operate the biochemistry research program of the medical college. It is proposed in the agreement above mentioned that the income from the Francis Hendricks Endowment will be applied by State University Medical Center of Syracuse for precisely the same program of research. Incidentally, this program has been continued by the medical center with funds which are presently being advanced by the State of New York in contemplation of receipt of the accumulated income from the Francis Hendricks endowment. The witness admitted that this type of research could be carried on, although not as effectively, by an educational institution which did not have a college of medicine.
It thus appears that the proposed disposition of the income will carry out the general benevolent educational purpose of the testator as fully and as effectively as in the past. •
The Attorney-G-eneral, State University, and the executor of the testator’s will do not oppose the application of Syracuse University although it is the contention of the executor, if clearly understood, that the proposed payment of the income is reasonably within the authority delegated by the will to the trustees of Syracuse University without court approval. However, the vigor with which the application has been opposed by the respondent distributees justified the precaution of the petitioner in seeking the sanction and approval of the court and thus avoiding exposure to possible future litigation.
The application of the petitioner is, therefore, granted to the extent of authorizing the payment of the income to State University on behalf of State University Medical Center at Syracuse to be devoted to such medical and surgical research as has the approval of the trustees of Syracuse University in accordance with the provisions of testator’s will. (Personal Property Law, § 12; Real Property Law, § 113; Rush Medical Coll. v. University of Chicago, 312 Ill. 109; Matter of Bishop, 206 Misc. 7; Matter of Ablett, 206 Misc. 157.)
The court reserved ruling on objections to certain questions which appeared extrinsic of the will, although possibly pertinent and material on the general question raised. At the conclusion of the trial it was found that the evidence received subject to objection was competent on the general question and the objections are, therefore, overruled.
Quotations at length from the authorities cited have been omitted that this decision might be retained within reasonable limits. Moreover, wills reflect the mental impulses of individual *917 testators and rarely do we find two alike. Precedents are of value to the extent of furnishing canons and rules for construction but do not exclude the possibility of error.
The foregoing are the facts found and constitute the decision of the court as required by section 440 of the Civil Practice Act.
Judgment accordingly, without costs in favor of either party as against the other.